KEVIN W. ALEXANDER (SBN: 175204)
kalexander@gordonrees.com
THOMAS J. STODDARD (SBN: 136299)
tstoddard@gordonrees.com
GORDON & REES LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
GUIDANT CORPORATION

FILED
JUL 18 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

ORIGINAL

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

FREDERICK B. NIMTZ,

Plaintiff,

vs.

DANIEL CEPIN, M.D., GUIDANT CORPORATION, and DOES 1 to 20,

Defendants.

CASE NO. '08 CV 1294 L AJB

**NOTICE OF REMOVAL OF ACTION BY DEFENDANT GUIDANT CORPORATION PURSUANT TO 28 U.S.C. §§ 1441 AND 1446**

[Filed concurrently with Notice of Related Cases, Certification as to Interested Parties, and Notice of Party with Financial Interest]

Complaint Filed: 6/26/08

**TO ALL PARTIES, THEIR ATTORNEYS OF RECORD AND THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE**, that pursuant to 28 U.S.C. §§ 1441 and 1446, defendant Guidant Corporation hereby removes the above-entitled action from the Superior Court of the State of California, County of San Diego, to the United States District Court, Southern District of California based on diversity jurisdiction on the following grounds:

## INTRODUCTION

1. On June 26, 2008, plaintiff Frederick B. Nimtz filed this action against Guidant Corporation ("Guidant") and Daniel Cepin, M.D. ("Dr. Cepin"), asserting personal injury claims allegedly resulting from the implantation of a

pacemaker. Plaintiff seeks general, special, and punitive damages based on causes of action for medical negligence and strict liability in tort. This action was filed in the Superior Court of State of California, County of San Diego, and entitled *Frederick B. Nimtz v. Daniel Cepin, M.D., Guidant Corporation*, and Does 1 to 20, Case No. 37-2008-00071342-CU-MM-SC. A true and correct copy of the complaint for damages is attached hereto as Exhibit "A."

2. This action is one of over 2,050 products liability actions against Guidant that been filed in or removed to federal court in the past three years. On November 7, 2005, pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation created *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, MDL-1708, to transfer and consolidate a number of cases to the United States District Court, District of Minnesota ("MDL Court"). A true and correct copy of the transfer order establishing MDL-1708 is attached hereto as Exhibit "B." More than 2,050 cases are currently pending in MDL-1708, and additional cases are in the process of being transferred to the MDL Court. Once removed, Guidant will designate this action as a "tag-along" action and seek inclusion of this action within the MDL proceedings. Guidant also intends to file a motion to stay this case pending MDL transfer.

3. Just as in other actions recently filed against Guidant, the plaintiff here has asserted a cause of action for strict liability. Plaintiff's allegations, like the allegations in MDL-1708, are based upon the premise that a cardiac device manufactured by Guidant was defective in its design and/or manufacture. In addition to the cause of action asserted against Guidant, plaintiff also asserts a cause of action for medical negligence against Dr. Cepin, the doctor who allegedly implanted the pacemaker. As demonstrated below, Dr. Cepin was improperly joined as a defendant, and complete diversity exists among plaintiff and all properly-joined defendants.

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

**PROCEDURAL REQUIREMENTS FOR REMOVAL**

4. As required by 28 U.S.C. § 1446 (a), attached are copies of all pleadings and orders in this action that are in the possession of Guidant.

5. To date, Guidant has not yet been served with plaintiff's summons and complaint. To the best of Guidant's knowledge, Dr. Cepin also has not yet been served with plaintiff's summons and complaint.

6. Guidant first became aware of plaintiff's complaint on July 1, 2008. A true and correct copy of the complaint for damages is attached as Exhibit "A." True and correct copies of the summons, together with the civil case cover sheet, and notice of case assignment are attached as Exhibit "C." These documents constitute all the papers and pleadings received to date in this matter by Guidant. 28 U.S.C. § 1446(a).

7. Pursuant to 28 U.S.C. § 1446(b), the notice of removal of a civil action shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based. In order to initiate the thirty-day removal period, receipt of the summons and complaint must be by proper service. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

8. This notice of removal is timely in that Guidant has not yet been served with plaintiffs complaint for damages. This notice of removal is also timely in that it was filed within one year of the filing of plaintiff's complaint for damages as required by 28 U.S.C. § 1446(b).

9. Venue is proper under 28 U.S. C. § 1391 because this action was pending in the Superior Court of the State of California, County of San Diego.

**DIVERSITY JURISDICTION EXISTS**

10. This is a civil action in which this Court has original jurisdiction under 28 U.S.C. § 1332 and is one that may be removed to this Court on the

grounds of diversity of citizenship under 28 U.S.C. §§ 1441 and 1446. Removal under section 1441 is appropriate in that there exists complete diversity of citizenship between plaintiff and all *properly joined* defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1441(b) (emphasis added).

**A. <u>Defendant Daniel Cepin, M.D. Was Improperly Joined.</u>**

11. Plaintiff has improperly joined the medical negligence claim asserted against Dr. Cepin with the products liability claims asserted against Guidant because plaintiff's medical negligence claim against Dr. Cepin does not arise out of the same transaction or occurrence as his claims against Guidant.

12. Permissive joinder of parties is only appropriate when there are claims "arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in this action." Fed. R. Civ. P. 20(a). If a defendant has been misjoined for failure to satisfy the conditions of permissive joinder under Rule 20, the Rules allow for severance of the improperly joined defendant. Fed. R. Civ. P. 21.

13. In MDL-1708, United States District Judge Donovan W. Frank issued two orders severing and remanding to state court a plaintiff's medical negligence claim against a non-diverse defendant. In *Alexander v. Boston Scientific Corp., et al.*, Case No. 05-1708 (D. Minn. June 4, 2007), the MDL Court severed and remanded to state court a pro se plaintiff's medical negligence claim against a non-diverse medical facility.[1] Similarly, in *Brown v. Guidant Corp., et al.*, Case No. 05-1708 (D. Min. Aug. 30, 2007), the MDL Court severed and remanded to state court a medical negligence claim against a non-diverse doctor.[2]

14. The pertinent facts in *Alexander v. Boston Scientific Corp., supra*, are

---

[1] A true and correct copy of the *Alexander v. Boston Scientific, et al.*, Case No. 05-1708, Memorandum Opinion and Order of June 4, 2007, is attached as Exhibit "D."

[2] A true and correct copy of the *Brown v. Guidant Corp., et al.*, Case No. 05-1708 (D. Minn. Aug. 30, 2007), Memorandum Opinion and Order of August 30, 2007, is attached as Exhibit "E."



Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

analogous to those here because the plaintiff alleged medical negligence on the basis that the medical facility knew or had reason to know that his pacemaker was potentially defective, and did not advise the plaintiff of such prior to implantation of the device. *Id.* at 4. The MDL Court concluded that joinder of the malpractice claim with the other general negligence and product liability claims was inappropriate in the face of Rule 20(b), and any liability that may be found against the manufacturing defendants or the medical facility would not be a basis for liability as to the other. *Id.* at 12.

15. The MDL Court's conclusion was based on its finding that the malpractice claim and the product liability claims "[did] not both involve common questions of law or fact and assert joint, several, or alternative liability 'arising out of the same transaction, occurrence, or series of transactions or occurrences.'" *Id.* at 12. While the MDL Court rejected the notion that the plaintiff's joinder of the medical facility constituted an egregious act of fraud upon the court, the MDL Court proceeded to sever the medical negligence claims on the grounds that "where a non-diverse party…cannot be properly joined under the Federal Rules of Civil Procedure, other interests, such as the Defendants' statutory right of removal, prevail over that of permitting a plaintiff's choice of forum." *Id.* at 13-14 (citing *Greene v. Wyeth*, 344 F. Supp. 2d 674, 685 (D. Nev. 2004)). The MDL Court allowed the product liability claims, which are similar to those alleged in this case, to remain in federal court. *Id.*

16. In *Brown v. Guidant Corp., supra.*, the MDL Court employed the same rationale as it did in *Alexander v. Boston Scientific Corp.*, and severed the medical negligence claims against the medical doctor from the product liability claims against the manufacturing defendants on the basis the doctor had been improperly joined under Rule 20. *Id.* at 5-6.

17. Where plaintiffs have improperly joined parties in a lawsuit pursuant to Rule 20, other federal courts have severed the claims against the misjoined

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

parties to preserve a removing party's right to removal. *See, e.g., In re Rezulin Prod. Liab. Litig.*, No. 00 Civ. 2483, 2003 WL 21276425, at *1-2 (S.D.N.Y. June 2, 2003); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) ("Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action").

18. Plaintiff has improperly joined Dr. Cepin because his medical malpractice claim against Dr. Cepin is both factually and legally distinct from his product liability claims against Guidant. Plaintiff's claim against Dr. Cepin is for medical negligence. Factually, this claim arises from an alleged breach of duty of care that Dr. Cepin owed to plaintiff. In contrast, plaintiff's claims against Guidant are based on a theory of strict liability, and allege the product manufactured by Guidant was defective in its manufacture and design, and unreasonably dangerous. Such claims revolve around the design, testing, manufacturing, and safety of the pacemaker at issue.

19. The evidence on plaintiff's claims against Dr. Cepin and Guidant will be necessarily different. The medical negligence claim will require plaintiff to assert evidence on the treatment, services, and medical care provided to plaintiff by Dr. Cepin. Plaintiff's product liability claims against Guidant, on the other hand, will require evidence on the development, manufacture, and testing of the pacemaker at issue. Thus, plaintiff's medical malpractice claim against Dr. Cepin is both factually and legally distinct from his product liability claim against Guidant.

20. Because plaintiff's claim against Dr. Cepin is separate and severable from his claims against Guidant, this Court has discretion to sever the medical negligence claim against Dr. Cepin, and retain jurisdiction over the claims against Guidant. Guidant urges this Court to sever plaintiff's claim against Dr. Cepin, and that the claim either be dismissed without prejudice or remanded while the claims against Guidant remain in federal court. The Court's authority is grounded in well-

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

settled law that where a non-diverse defendant has been fraudulently joined, his presence does not preclude removal. *United Computer Sys., Inc. v. AT&T*, 298 F.3d, 756, 761-762 (9th Cir. 2002); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1319 (9th Cir. 1998); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); *Simpson v. Union Pac. RR. Co.*, 282 F. Supp.2d 1151, 1154-1155 (N.D. Cal. 2003).

21. As demonstrated above, plaintiff's medical negligence claim against Dr. Cepin is both factually and legally distinct from his strict liability claims against Guidant. Because plaintiff's claim against Dr. Cepin is wholly distinct from his claims against Guidant, such claims do not involve common questions of law or fact and assert joint, several, or alternative liability arising out of the same transaction, occurrence, or series of transactions or occurrences, as required by Rule 20. Thus, plaintiff has improperly joined the medical negligence claim asserted against Dr. Cepin with the products liability claims asserted against Guidant.

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

**B. <u>Complete Diversity Exists Among All Properly Joined Defendants.</u>**

22. Plaintiff Frederick B. Nimtz is a citizen and resident of California. (Ex. "A," Compl. ¶ 3.)

23. Guidant is an Indiana Corporation with its principal place of business in Minnesota. For purposes of diversity of citizenship, a corporation is deemed to be a citizen of both the state of its incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332 (c)(1). Thus, pursuant to 28 U.S.C. § 1332(c)(1), Guidant is a citizen of both Indiana and Minnesota.

24. Upon information and belief, improperly-joined defendant Dr. Cepin is a citizen and resident of California. (Compl. ¶ 1.)

25. Dr. Cepin has been improperly joined in an attempt to destroy diversity and prevent removal of this case. Thus, his citizenship cannot preclude removal on diversity grounds. *See United Computer Sys., Inc., supra*, 298 F.3d at

761-762; *see also McCabe, supra*, 811 F.2d at 1339; *Simpson, supra*, 282 F. Supp. 2d at 1154-1155.

26. For purposes of removal, the citizenship of defendants sued under fictitious names is disregarded. 28 U.S.C. § 1441(a).

27. Thus, complete diversity of citizenship exists among the plaintiff and the only properly joined defendant—Guidant Corporation.

**C. <u>The Amount In Controversy Is Satisfied.</u>**

28. The amount in controversy in this case exceeds $75,000, exclusive of interest and costs.

29. A defendant may utilize the allegations in a complaint to establish the amount in controversy. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (citing *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326 (5th Cir. 1995)); *Conrad Assocs. v. Hartford Accident & Indemn. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998). Alternatively, a defendant may set forth facts in its notice of removal which demonstrate that the amount in controversy exceeds $75,000. *Singer, supra*, 116 F.3d at 377.

30. Plaintiff seeks general and special damages arising out of implantation of an allegedly defective pacemaker manufactured by Guidant. (Ex. "A," Compl. Prayer for Relief ¶¶ 1-3.) The face of the complaint establishes that plaintiff seeks damages well in excess of $75,000. Plaintiff alleges the following injuries:

> Inability to sleep more than an hour without being awakened by an uneasy feeling and desire to urinate, frequent light headedness or dizziness, a constant nausea, a constant soreness in [his] joints and muscles, constant difficulty walking, continued difficulty conducting leisure activities to the point of elimination of them."

(Ex. "A," Compl. 6:7-12.) In light of the fact that plaintiff is seeking general and special damages, as well as past and future costs of prosecuting his action, a jury could return an award in excess of $75,000. *See, e.g., Quinn v. Kimble*, 228 F. Supp. 2d 1038, 1041 (E.D. Mo. 2002) (holding that the amount in controversy was

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

satisfied where plaintiff sought compensation for past and future medical expenses, lost wages, and damages for loss of enjoyment of life); *In re Rezulin Prods. Liab. Litig*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (holding that the amount in controversy was satisfied where plaintiffs alleged economic loss, medical and health expenses, and serious medical conditions).

31. Additionally, as set forth above, there are currently more than 2,050 actions against Guidant in MDL-1708. Those claims are similar to the claims in this case—that cardiac devices manufactured by Guidant caused personal injury to plaintiffs implanted with such devices. Like the instant action, a number of the plaintiffs also claimed unspecified damages. Many of these cases were originally filed in state courts and successfully removed to federal court. In light of this, and the fact that numerous similar actions were originally filed in federal courts based on grounds of diversity jurisdiction, there is an indication that cases of this type are valued in excess of $75,000, exclusive of interest and costs.

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

32. Moreover, reported verdicts and settlements in cases with claims similar to those of plaintiff's, indicate that damages in cases of this type likely exceed $75,000, exclusive of interest and costs. *See John Doe v. ABC Hospital*, 21 No. 2 The Ohio Trial Reporter (Jas Publications 2006) ($2.1 million settlement in case where plaintiff alleged permanent brain injury during cardiac surgery to repair a defective lead in his pacemaker); *Brooks v. Jersey Shore Medical Center, et al.*, 12 No. 7 Jury Verdict Review Publications, Inc. (2004) (awarding $2,750,000 to plaintiff in suit alleging negligent removal of pacemaker wires); *Judkins v. Klaus H. Neumann, M.D.*, 13 No. 6 The Ohio Trial Reporter (JAS Publications 1999) (granting a $620,000 verdict in a suit alleging failure of pacemaker battery and failure to monitor pacemaker); *Hern v. Intermedics, Inc.*, Mealey's CA Jury Verdicts & Settlements 205 (LexisNexis 1997) (plaintiff recovers $1,640,887 from manufacturer after batteries on his pacemaker failed).

33. Plaintiff also seeks exemplary and punitive damages. (Ex. "A,"

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

Compl. Prayer for Relief ¶ 3). These damages are properly included in the calculation of the amount in controversy. *Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 240 (1943).

34. The totality of these factors establish that the amount in controversy meets the jurisdictional requirement.

35. Thus, the state court action may be removed to this Court by Guidant in accordance with the provisions of 28 U.S.C. § 1441(a) because (i) this action is a civil action pending within the jurisdiction of the United States District Court for the Southern District of California; (ii) this action is between citizens of different states; and (iii) the amount in controversy exceeds $75,000, exclusive of interest and costs.

**FILING OF REMOVAL PAPERS**

36. Pursuant to 28 U.S.C. § 1446(d), written notice of removal of this action will be given promptly to plaintiff, and a notice of filing of notice of removal will be filed with the Superior Court of the State of California, County of San Diego.

WHEREFORE, Guidant Corporation hereby removes the action now pending against it in the Superior Court of the State of California, County of San Diego, and requests that further proceedings be conducted in this Court as provided by law.

Dated: July 18, 2008

GORDON & REES LLP

By: [signature]
Kevin Alexander
Thomas J. Stoddard
Attorneys for Defendant
GUIDANT CORPORATION

EXHIBIT A

**FREDERICK B. NIMTZ**
IN PRO PER
3815 Valley Vista Road
Bonita, CA 91902
TEL.:(619) 479-7585

FILED
03 JUN 26 AM 11:46
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

**SOUTH COUNTY BRANCH**

**FREDERICK B. NIMTZ,**

v.

**DANIEL CEPIN, M.D.**
**GUIDANT CORPORATION,**
And Does 1 to 20,
Defendants.

**CASE NO.** 37-2008-00071342-CU-MM-SC

**COMPLAINT FOR DAMAGES FOR MEDICAL NEGLIGENCE, STRICT PRODUCT LIABILITY**

Plaintiff alleges:

1. Defendant, **DANIEL CEPIN, M.D.**, is now, and at all times herein mentioned has been, and now is, a resident of San Diego County, in the State of California. Defendant, **DANIEL CEPIN, M.D.**, is hereinafter referred to as "**DR. CEPIN**".

2. Defendant, **GUIDANT CORPORATION** is now, and at all times mentioned has been, a company incorporated in the State of Minnesota, with it's principal offices in the State of Minnesota,

///

but also a corporation actively doing business in the State of California at all times mentioned herein. The Defendant **GUIDANT CORPORATION** is hereinafter referred to as "**GUIDANT**".

3. Plaintiff, **FREDERICK B. NIMTZ**, is now, and at all times herein mentioned has been, a resident of the County of San Diego, State of California. Hereinafter he is referred to as "**MR. NIMTZ**".

4. Plaintiff is ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise of Defendants herein named as DOES 1 through 20, inclusive, he therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as a DOE is responsible in some manner for the events and happenings referred to herein and caused injuries and damages proximately thereby, as hereinafter alleged. Plaintiff will seek leave to amend this Complaint when the true names and capacities of each of the DOE Defendants has been ascertained.

5. On or about March 15, 2006, **DR. CEPIN** installed, without my prior consent, a pacemaker manufactured by the Defendant **GUIDANT** surgically implanted at Sharp Hospital in Chula Vista, California. At that time said **DR. CEPIN** knew or should have known that I had a resting heart beat of approximately fifty (50) beats per minute. Soon after the surgery I went home. Thereafter, every night while asleep I had to get up about five or six times to urinate. After approximately seven days of persisting discomfort I went back to see the Defendant **DR. CEPIN**

///

about this persisting discomfort. He informed me that the pacemaker had been set by him to activate if or when I should ever reach a heart rate of sixty (60) beats per minute. I reminded him at that time that my resting heart rate was approximately (50) beats per minute. Said **DR. CEPIN** then walked over and shook my hand and instructed his technician to set the pacemaker to activate at forty (40) beats per minute.

Over the next many months I continued to urinate unusually frequently at night and during the day just did not feel well. My primary physician recommended that I go see **DR. CEPIN** again and tell him about my continuing symptoms. After several attempts I was finally provided an appointment with **DR. CEPIN** on March 29, 2007. Before seeing said **DR. CEPIN** his technician conducted some preliminary testing. When said **DR. CEPIN** entered the examining room, before I could even greet him, the technician asked said **DR. CEPIN** to step out in the hallway to discuss something with him out of my presence.

A short time later said **DR. CEPIN** entered the examining room. He told me that his preliminary examination conducted by his technician showed that the pacemaker manufactured by the Defendant **GUIDANT** was, for some then unknown reason, not hooked up to the upper chamber of my heart the way it was supposed to be. He suggested at that time I go see a **DR. PRAHBU** and that he thought I was a good "candidate" for some treatment said **DR. PRAHBU** is known to employ.

On said March 29, 2007, I called said **DR. PRAHBU's** office to make an appointment with him and they said the earliest he could

///

see me was in two months. I asked the secretary to call **DR. CEPIN** as he urgently recommended me to see said **DR. PRAHBU** and they called me back and asked to come in immediately. I was then examined briefly by said **DR. PRAHBU** and a follow up visit was scheduled for June 19, 2007.

On or about June 8, 2007, I saw my family physician and told him again about my frequent night urination and my feeling that something was wrong with my body.

On or about June 19, 2007, I went for my follow up appointment with said **DR. PRAHBU**. I was still feeling lousy. He performed some tests and told me that since I had last seen him my heart rate had reached as low as approximately thirty five (35) beats per minute on several occasions. As a result he told me he was going to set my pacemaker to activate at approximately thirty (30) beats per minute.

In addition on or about June 19, 2007, a technician for **DR. PRAHBU** installed a twenty four hour heart monitor that I was to wear until my follow up appointment with **DR. PRAHBU** on June 26, 2007.

On or about June 26, 2007, the technician for said **DR. PRAHBU** reviewed the heart monitor results and my pacemaker results and told me that no further tests were going to be done on me that day because the results of the monitor and the pacemaker indicate that "something is wrong with your (my) heart".

Thereafter, said **DR. PRAHBU** entered the examining room. I asked him if he knew the results of the twenty four hour heart rate monitor he had prescribed for me. He said that the twenty

///

four hour heart rate monitor showed that my heartbeat had not gone below fifty (50) beats per minute, but that my pacemaker showed that my heartbeat had gone down as low as thirty (30) beats per minute over the same period of time.

Said **DR. PRAHBU** then told me that in his professional opinion the pacemaker manufactured by the defendant **GUIDANT** and installed by the defendant **DR. CEPIN** was defective because my heart beat had not gone below fifty (50) beats per minute during the previous seven or eight days, however the pacemaker had showed that my heart beat had gone below thirty five (35) beats per minute.

Said **DR. PRAHBU** further informed me that he believed that said **DR. CEPIN** and/or his office staff likely had not set the pacemaker to activate properly since it's installation, in accordance with the requirements and instructions of the defendant **GUIDANT**, due to my known low resting heart beat, which as well contributed and/or had caused much of my pain and suffering.

Said **DR. PRAHBU** immediately in my presence called the defendant **GUIDANT** and insisted on talking to an engineer and not a salesmen to inquire as to how to disengage the pacemaker. Thereafter, as I understand it, he disengaged the computer chip that was pacing my heart as well as adjusted the mechanism for pacing my heart down to thirty beats per minute, effectively causing the device to cease to function. Said pacemaker remains in my body because surgery to remove it I am told by my physician carries with it too much risk.

///

As a result said defective pacemaker manufactured by the Defendant **GUIDANT** and surgically installed by the Defendant **DR. CEPIN** which was not activated and/or adjusted correctly all caused, to some degree or another, my heart to beat erratically for several years causing me the following unnecceary specific pain and suffering:

Inability to sleep more than an hour without being awakened by an uneasy feeling and a desire to urinate, frequent light headedness or dizziness, a constant nausea, a constant soreness in my joints and muscles, constant difficulty walking, continued difficulty conducting leisure activities to the point of elimination of them.

**FIRST CAUSE OF ACTION**
**MEDICAL NEGLIGENCE**

6. Plaintiff incorporates by reference herein the proceeding paragraphs One through Five as though fully set forth herein.

7. The physician defendant said **DR. CEPIN** herein was the medical provider who surgically implanted the pacemaker manufactured by the defendant **GUIDANT**.

8. At all times herein mentioned, the physician Defendant **DR. CEPIN** was the agent of the defendant **GUIDANT CORPORATION** who manufactured the pacemaker.

9. This Defendant **DR. CEPIN** held himself out to be knowledgeable in the necessity of and the surgical installation of pacemakers.

10. This Defendant **DR. CEPIN** knew, or in the exercise of reasonable care, should have known, whether this medical device

///

was defective prior to it's implantation into my body, how to properly implant said medical device so that it functioned correctly in my body, and how to properly monitor and/or adjust said medical device according to my vital statistics and my known pulse rate for the years following the implantation surgery.

11. This Defendant **DR. CEPIN's** actions and inactions described herein as a medical professional fell well below the standard of reasonable medical practice for the community.

12. I became the patient of said **DR. CEPIN** who undertook to examine, inform, treat, diagnose, prognose, perform surgery on and otherwise render medical, hospital, and other medical related services to me.

13. At all times mentioned herein, the defendant **DR. CEPIN** carelessly and negligently examined, informed, treated, adjusted, calibrated, diagnosed, prognosed, performed surgery on and otherwise rendered medical, hospital and other medical related services and care to me.

14. From and after said time, the Defendant **DR. CEPIN** carelessly and negligently cared for, treated and operated on me by the use of instrumentatlies, machines and medical procedures, the exact nature of which is not fully known to me at this time and which instrumentatlites, machines and medical procedures were under the sole and exclusive control and custody of the Defendant **DR. CEPIN**.

15. As a result of the professional negligence and medical malpractice of the Defendant **DR. CEPIN** I have suffered severe and

///

///

lengthy injuries and damages as alleged previously herein.

**SECOND CAUSE OF ACTION**
**STRICT LIABILITY IN TORT**

16. Plaintiff incorporated by reference herein the Proceeding paragraphs One through Fifteen as though fully set forth herein.

17. The aforementioned pacemaker manufactured by the Defendant **GUIDANT** was defective and unreasonably dangerous in design and manufacture.

18. The aforementioned pacemaker failed to be accompanied by or contain adequate instructions as to it's use and limitations and/or adequate warnings concerning the defective condition, characteristics and the risks associated with said product.

19. The Defendant **GUIDANT** knew that the aforementioned product would be purchased and used by the purchaser or user without inspection for defects therein or in any of its components as to design, manufacture, use, adjustment and warnings.

20. The Defendant **GUIDANT** knew or should Have known of the defective condition, characteristics and risks associated with said product as outlined herein.

21. The Plaintiff did not know, nor had reason to know, prior to the use or application of the aforementioned product for some period of time, of the defective condition of said product.

22. As a result of said defective condition of the aforementioned product, I have suffered injuries and damages as detailed herein.

///

**WHEREFORE**, Plaintiff prays for judgment against the Defendants, and each of them, as follows:

1. For past and future general damages according to proof;
2. For past and future medical and incidental expenses, according to proof;
3. For punitive and exemplary damages in an amount to be determined at trial;
4. For prejudgment interest on all damages as allowed by the laws of the State of California;
5. For past and future costs of suit incurred herein;
6. In the alternative, for damages based upon market share liability; and
7. For such other and further relief as this Court deems just and proper.

Dated: 6/26/08

**FREDERICK B. NIMTZ**,
Plaintiff

JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

DEC 12 2005

FILED CLERK'S OFFICE

## DOCKET NO. 1708

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE GUIDANT CORP. IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION

## (SEE ATTACHED SCHEDULE)

## CONDITIONAL TRANSFER ORDER (CTO-1)

On November 7, 2005, the Panel transferred four civil actions to the United States District Court for the District of Minnesota for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. With the consent of that court, all such actions have been assigned to the Honorable Donovan W. Frank.

It appears that the actions on this conditional transfer order involve questions of fact which are common to the actions previously transferred to the District of Minnesota and assigned to Judge Frank.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the District of Minnesota for the reasons stated in the order of November 7, 2005, ___F.Supp.2d___ (J.P.M.L. 2005), and, with the consent of that court, assigned to the Honorable Donovan W. Frank.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the District of Minnesota. The transmittal of this order to said Clerk shall be stayed fifteen (15) days from the entry thereof and if any party files a notice of opposition with the Clerk of the Panel within this fifteen (15) day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Michael J. Beck

Michael J. Beck
Clerk of the Panel

# SCHEDULE CTO-1 - TAG-ALONG ACTIONS
# DOCKET NO. 1708
# IN RE GUIDANT CORP. IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION

| DIST. DIV. C.A. # | CASE CAPTION |
|---|---|
| CALIFORNIA CENTRAL | |
| CAC 2 05-8070 | Theodore Cohen v. Guidant Corp. |
| CAC 5 05-760 | Leonard Mayem v. Guidant Corp. |
| CAC 5 05-964 | Sharon Williams-Datcher v. Guidant Corp., et al. |
| CALIFORNIA EASTERN | |
| CAE 2 05-1317 | Fred Corfee v. Guidant Corp., et al. |
| CAE 2 05-2113 | James Bagwell, et al. v. Guidant Corp., et al. |
| CALIFORNIA NORTHERN | |
| CAN 3 05-3042 | Alphonzo Allen v. Guidant Corp. |
| CAN 3 05-3160 | Lorraine Furtado, et al. v. Guidant Corp., et al. |
| CAN 3 05-3279 | Sheila Ettinger v. Guidant Corp., et al. |
| CALIFORNIA SOUTHERN | |
| CAS 3 05-1875 | Johnnie Carter v. Guidant Corp. |
| CAS 3 05-1956 | Leopoldo Duron, Jr. v. Guidant Corp., et al. |
| CAS 3 05-1957 | Annette Scott v. Guidant Corp., et al. |
| COLORADO | |
| CO 1 05-1645 | Oren Urich v. Guidant Corp., et al. |
| CONNECTICUT | |
| CT 3 05-1516 | Gary DeRose v. Guidant Corp. |
| FLORIDA MIDDLE | |
| FLM 2 05-445 | Alfred Fuller v. Guidant Corp. |
| FLM 3 05-728 | Robert Earl Smith, etc. v. Guidant Corp. |
| FLM 5 05-379 | Richard James Rebone v. Guidant Corp., et al. |
| FLM 6 05-1683 | Steve Gaydos, et al. v. Guidant Corp., et al. |
| FLM 8 05-1456 | Robert Haberle v. Guidant Corp., et al. |
| FLM 8 05-1606 | Kenneth J. Pepper v. Guidant Corp., et al. |
| FLORIDA NORTHERN | |
| FLN 3 05-309 | Anthony Micelli v. Guidant Corp., et al. |
| FLORIDA SOUTHERN | |
| FLS 9 05-80850 | Judy Passante v. Guidant Corp., et al. |
| FLS 9 05-80851 | Eric Harkonen, et al. v. Guidant Corp., et al. |
| FLS 9 05-80957 | Paul Jones, et al. v. Guidant Corp., et al. |
| HAWAII | |
| HI 1 05-326 | Joseph Soon Kun Kang v. Cardiac Pacemakers, Inc. |
| ILLINOIS NORTHERN | |
| ILN 1 05-4250 | Theresa Shea, etc. v. Guidant Corp., et al. |

SCHEDULE CTO-1 TAG-ALONG ACTIONS (MDL-1708)

| DIST. DIV. C.A. # | CASE CAPTION |
|---|---|
| INDIANA SOUTHERN | |
| INS 1 05-1082 | Lydia Pierce v. Guidant Corp., et al. |
| INS 1 05-1115 | Christofer Brewster v. Guidant Corp., et al. |
| INS 1 05-1322 | David Acthison v. Guidant Corp., et al. |
| INS 1 05-1353 | Fred Gower, et al. v. Guidant Corp., et al. |
| LOUISIANA EASTERN | |
| LAE 2 05-3709 | John J. Legendre v. Guidant Corp. |
| LAE 2 05-3737 | Redge Westcott, III v. Guidant Corp., et al. |
| LAE 2 05-4016 | Thomas A. Gruber v. Guidant Corp., et al. |
| LAE 2 05-4017 | Emmitt R. Messick v. Guidant Corp., et al. |
| LAE 2 05-4044 | Kenneth R. Casanova v. Guidant Corp., et al. |
| LOUISIANA MIDDLE | |
| LAM 3 05-1015 | Joseph Clyde Brown, Jr. v. Guidant Corp. |
| LOUISIANA WESTERN | |
| LAW 5 05-1512 | Doris Tisdon, etc. v. Guidant Corp., et al. |
| LAW 5 05-1882 | Patrick Pouncy, et al. v. Guidant Corp., et al. |
| LAW 6 05-1351 | Joyce Broussard Valls, et al. v. Guidant Corp., et al. |
| LAW 6 05-1352 | James W. Eskine v. Guidant Corp., et al. |
| MAINE | |
| ME 2 05-182 | Cindy A. Lowry v. Guidant Corp. |
| MISSOURI WESTERN | |
| MOW 4 05-785 | Floyd A. Newman, Jr., v. Guidant Corp., et al. |
| MOW 4 05-786 | Fred H. Simon v. Guidant Corp., et al. |
| MOW 4 05-939 | Christopher J. Cipolla v. Guidant Corp., et al. |
| MOW 4 05-1007 | Jerome Terry, Jr. v. Guidant Corp., et al. |
| MISSISSIPPI NORTHERN | |
| MSN 2 05-149 | Johnny R. Clark v. Guidant Corp., et al. |
| NORTH CAROLINA MIDDLE | |
| NCM 1 05-720 | Fred M. Lyle, et al. v. Guidant Corp., et al. |
| NORTH CAROLINA WESTERN | |
| NCW 1 05-275 | Virgil H. Cook, et al. v. Guidant Corp., et al. |
| NCW 3 05-355 | Billy G. Strickland v. Guidant Corp., et al. |
| NEW HAMPSHIRE | |
| NH 1 05-400 | Richard Harvey v. Guidant Corp., et al. |
| NEW JERSEY | |
| NJ 1 05-4062 | Wolf Schulsinger v. Guidant Corp., et al. |
| NJ 2 05-4195 | Bernard Golden v. Guidant Corp., et al. |
| NJ 2 05-4305 | Herb Cohen, et al. v. Guidant Corp., et al. |
| NEW YORK EASTERN | |
| NYE 1 05-2331 | Richard Torre, et al. v. Guidant Corp. |
| NYE 1 05-3397 | Howard Walston, et al. v. Guidant Corp., et al. |
| NYE 2 05-3856 | Melissa J. Poje v. Guidant Corp., et al. |
| NYE 2 05-4927 | John Clarke v. Intermedics, Inc., et al. |

SCHEDULE CTO-1 TAG-ALONG ACTIONS (MDL-1708)

| DIST. DIV. C.A. # | CASE CAPTION |
|---|---|
| NEW YORK NORTHERN | |
| NYN 5 05-1213 | Phillip Hobb, et al. v. Guidant Corp., et al. |
| NEW YORK SOUTHERN | |
| NYS 1 05-7176 | Michael Thorpe, et al. v. Guidant Corp., et al. |
| NYS 1 05-8296 | Nicholas T. Ortiz, et al. v. Guidant Corp., et al. |
| NYS 1 05-8298 | John Fanzini, et al. v. Guidant Corp., et al. |
| NYS 1 05-8811 | Stacey Webb, et al. v. Guidant Corp., et al. |
| NYS 1 05-8812 | Douglas Marozin v. Guidant Corp., et al. |
| NYS 7 05-8297 | Ellen Markert v. Guidant Corp., et al. |
| OHIO NORTHERN | |
| OHN 1 05-1880 | Johnny T. Watts, et al. v. Guidant Corp. |
| OHN 1 05-1898 | Fred J. Stauder, et al. v. Guidant Corp., et al. |
| OHN 1 05-2297 | Johnny W. Western, et al. v. Guidant Corp., et al. |
| OHN 3 05-7440 | Clara Zink, et al. v. Guidant Corp., et al. |
| OHIO SOUTHERN | |
| OHS 2 05-703 | Beverly Douglas, et al. v. Guidant Corp., et al. |
| OHS 2 05-763 | Thomas W. Zurek, et al. v. Guidant Corp., et al. |
| OKLAHOMA NORTHERN | |
| OKN 4 05-444 | Jean Burke, etc. v. Guidant Corp. |
| PENNSYLVANIA EASTERN | |
| PAE 2 05-3580 | Steven Perusich v. Guidant Corp., et al. |
| PAE 2 05-4409 | William Jackson, et al. v. Guidant Corp., et al. |
| PAE 2 05-5843 | Geoffrey Bowman, et al. v. Guidant Corp., et al. |
| PUERTO RICO | |
| PR 3 05-1888 | Carlos L. Ramirez-Santiago v. Guidant Corp., et al. |
| SOUTH CAROLINA | |
| SC 8 05-2811 | Tim R. Whitman, et al. v. Guidant Corp., et al. |
| TENNESSEE EASTERN | |
| TNE 2 05-268 | Janice Jones, etc. v. Guidant Corp., et al. |
| TEXAS WESTERN | |
| TXW 7 05-166 | Charles H. Little, et al. v. Guidant Corp., et al. |
| UTAH | |
| UT 2 05-873 | Juanita Edge, et al. v. Guidant Corp. |
| WEST VIRGINIA NORTHERN | |
| WVN 5 05-151 | Gary Dusch, et al. v. Guidant Corp., et al. |

EXHIBIT C

FILED
SOUTH COUNTY

SUM-100

08 JUN 26 PM 1:53

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

DANIEL LEPIN M.D.

GUIDANT CORPORATION

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

FRED B. NIMTZ

**You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.**

**There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.**

***Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.***

***Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.***

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER: *(Número del Caso):* 37-2008-00071342-CU-MM-SC

SOUTH COUNTY DIVISION
500 3RD AVE CHULA VISTA, CA 91910-5649

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

FRED NIMTZ
3815 VALLEY VISTA RD BONITA CAL 91902 619/479-7585

DATE: *(Fecha)* 6/26/08 Clerk, by *(Secretario)* L. Olmos, Deputy *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

SUPERIOR COURT SAN DIEGO COUNTY, CA

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:



Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

SUMMONS

Code of Civil Procedure §§ 412.20, 465

American LegalNet, Inc.
www.USCourtForms.com

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, bar number, and address):
FRED B. NIMTZ
TELEPHONE NO.: 619/479-7585 FAX NO.:
ATTORNEY FOR (Name):

FOR COURT USE ONLY
FILED
SOUTH COUNTY
08 JUN 26 AM 11:51
CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
- ☐ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
- ☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081-6643
- ☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
- ☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200
- ☑ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649

CASE NAME:
DANIEL CENDIN M.D. / GUIDANT CORPORATION

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 37-2008-00071342-CU-MM-SC |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 1811) | JUDGE:<br>DEPT.: |

*All five (5) items below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☑ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800–1812)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental /Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   - a. ☐ Large number of separately represented parties
   - b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   - c. ☐ Substantial amount of documentary evidence
   - d. ☐ Large number of witnesses
   - e. ☐ Coordination with related actions pending in one or more courts in other counties, states or countries, or in a federal court
   - f. ☐ Substantial post-judgment judicial supervision
3. Type of remedies sought *(check all that apply)*:
   a. ☑ monetary b. ☐ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify)*:
5. This case ☐ is ☑ is not a class action suit.

Date:

FRED B. NIMTZ
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate, Family, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS: 500 Third Avenue
MAILING ADDRESS: 500 Third Avenue
CITY AND ZIP CODE: Chula Vista, CA 91910-5649
BRANCH NAME: South County
TELEPHONE NUMBER: (619) 746-6071

PLAINTIFF(S) / PETITIONER(S): frederick B Nimtz

DEFENDANT(S) / RESPONDENT(S): Daniel Cepin M.D. et.al.

NIMTZ VS. CEPIN M.D.

| | |
|---|---|
| **NOTICE OF CASE ASSIGNMENT** | CASE NUMBER: 37-2008-00071342-CU-MM-SC |

Judge: William S. Cannon Department: S-04

**COMPLAINT/PETITION FILED:** 06/26/2008

**CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW**

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

In re: GUIDANT CORP. IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION

MDL No. 05-1708 (DWF/AJB)

This Document Relates to:

Donald Alexander,

Plaintiff,

v. Civil No. 07-1129 (DWF/AJB)

Boston Scientific Corporation, Guidant Subsidiary of Boston Scientific Corporation, and St. Anthony's Medical Center,

Defendants.

**MEMORANDUM
OPINION AND ORDER**

---

Donald Alexander, 31057 Oak Ridge Drive, Rocky Mount, MO 65072, *pro se*.

Timothy A. Pratt, Esq., Deborah A. Moeller, Esq., and Julie R. Somora, Esq., Shook Hardy & Bacon, LLP, counsel for Defendants Boston Scientific Corporation and Guidant Subsidiary of Boston Scientific Corporation.

Douglas Ponder, Esq., Karen C. Moske, Esq., and V. Scott Williams, Esq., Hazelwood & Weber, LLC, counsel for Defendant St. Anthony's Medical Center.

---

The above-entitled matter is before the Court pursuant to Plaintiff Donald Alexander's Motion for Remand to St. Louis County Circuit Court and Defendant St. Anthony's Medical Center's ("St. Anthony's") Motion to Dismiss. For the reasons stated below, the Court grants Alexander's Motion for Remand as to Defendant

St. Anthony's, but denies the motion as to all remaining Defendants. The Court denies St. Anthony's Motion to Dismiss as moot.

## BACKGROUND

On May 25, 2006, Alexander was implanted with a Model 1291 Guidant pacemaker at St. Anthony's facilities. Alexander alleges that some of St. Anthony's nurses and staff assisted in the implant. Alexander also alleges that St. Anthony's paid for the pacemaker and included the charges for the pacemaker in Alexander's patient billing.

The Model 1291 device that was implanted in Alexander was manufactured in December 2005. Prior to its manufacture, on September 22, 2005, Guidant issued a recall regarding its Model 1291 Guidant pacemakers, among others. The recall was based on two failure modes.

As to the first failure mode, Guidant recommended that physicians "consider the projected low and declining failure rate in addition to the unique needs of individual patients in their medical decisions regarding patient management" and recommended "normal monitoring, as per device labeling." (Aff. of V. Scott Williams in Supp. of Def. St. Anthony's Mot. to Dismiss and Mem. of Law in Opp'n to Pl.'s Mot. for Remand ("Williams Aff.") at Ex. C.) In addition, Guidant stated, "As always, advise patients to seek attention immediately if they experience syncope or lightheadedness." (*Id.*) As to the second failure mode, Guidant recommended the following:

> Guidant recommends verifying pacemaker operation in the packaging prior to the implant procedure. Devices exhibiting intermittent or permanent loss or output or telemetry should not be implanted.

> Physicians should consider both the very low occurrence rate and that no failures have been observed after successful confirmation of pacing at implant, in addition to the unique needs of individual patients, in their medical decisions regarding patient management.

(Williams Aff. at Ex. C.)

Approximately two months later, on December 12, 2005, Guidant issued an "Advisory Update" that addressed the September 22, 2005 recall letter. There, Guidant explained the following:

> In March of 2004, Guidant discontinued shipping from manufacturing facilities INSIGNIA and NEXUS devices susceptible to "Failure Mode 1."
>
> Guidant has recently discontinued shipping from manufacturing facilities INSIGNIA and NEXUS devices susceptible to "Failure Mode 2." While Guidant recommends normal monitoring for patients implanted with these devices, Guidant representatives will retrieve and replace remaining hospital inventory with product free from susceptibility to "Mode 2" peri-implant failure.
>
> INSIGNIA and NEXUS devices currently being distributed by Guidant are not subject to either failure mode and therefore are not included in either recall.

(Williams Aff. at Ex. D.) Although Alexander's Model 1291 device was manufactured in December 2005, it is unclear whether the device was manufactured and shipped prior to this December 12, 2005 Advisory Update.

Approximately one month after Alexander's implant surgery, on June 23, 2006, Guidant issued a separate recall of the Model 1291. Thereafter, on July 7, 2006, Alexander received notice from the St. Louis Metro Heart Group that the specific Guidant pacemaker that was implanted in him had been recalled in connection with defective product concerns.

On July 25, 2006, Alexander filed this case against Defendants Boston Scientific Corporation ("BSC"), Guidant Subsidiary of Boston Scientific Corporation ("Guidant"), and St. Anthony's in the Circuit Court of St. Louis County, Missouri. It is undisputed that Alexander and St. Anthony's are both Missouri residents. Guidant is a citizen of Indiana and BSC is a citizen of Delaware and Massachusetts.

Alexander alleges that BSC and Guidant are liable for manufacturing and design defects and for the failure to warn patients of the alleged health risks and/or defects associated with certain Guidant implantable cardiac medical devices. Alexander alleges that St. Anthony's committed medical negligence because it knew or had reason to know that Alexander's Guidant device was potentially defective and because it did not advise Alexander or put Alexander on notice of these facts prior to implantation.

More specifically, Alexander alleges that:

> [p]rior to the actual implant surgery, both Guidant Corporation's said and physically present employee/agent and St. Anthony's Medical Center nursing staff or a designated St. Anthony's Medical Center employee/agent had the duty to disclose to Plaintiff that the Guidant pacemaker to be implanted in Plaintiff's chest is potentially defective and that a recall had been issued for Guidant pacemakers, model 1291 in September 2005 and that there existed a known manufacturing/assembly defect such that some unspecified percentage of Guidant pacemakers, model 1291, are known to be dangerously defective.
>
> 4. Both Guidant Corporation's said employee/agent and St. Anthony's Medical Center's staff employees attending to Plaintiff on May 25, 2006 breached the duty to disclose to Plaintiff that some unspecified percentage of Guidant pacemakers, model 1291, are know[n] to be dangerously defective, that several persons have died in connection with Guidant pacemakers, and that hundreds of product liability law suits are pending against Guidant Corporation.

(Williams Aff., Ex. B at 3-4.)

On August 25, 2006, BSC and Guidant removed the case to the United States District Court for the Eastern District of Missouri, Eastern Division, asserting that complete diversity exists because Alexander improperly joined St. Anthony's to defeat diversity jurisdiction. BSC and Guidant then filed a motion to stay all proceedings pending transfer of Alexander's case to the District of Minnesota as part of MDL No. 1708. The United States District Court for the Eastern District of Missouri granted the motion to stay and on February 7, 2007, the case was formally transferred to the District of Minnesota as part of MDL No. 1708.

On February 20, 2007, Alexander filed a Motion to Remand to St. Louis County Circuit Court, claiming that St. Anthony's is a proper defendant in the case and therefore complete diversity is lacking. On March 9, 2007, St. Anthony's filed a Motion to Dismiss, claiming that Alexander has failed to state a claim against St. Anthony's.

## I. Motion to Remand

The party seeking removal and opposing remand bears the burden of establishing federal subject matter jurisdiction. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). Generally, a state court action may only be removed if a federal district court would have original jurisdiction to hear the case. 28 U.S.C. § 1441(a).[1]

---

[1] Section 1441(a) provides in pertinent part:

> [A]ny civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States.

28 U.S.C. § 1441(a).

Where the action is based upon diversity jurisdiction, it is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). "In determining whether removal was proper, the removal statute is to be narrowly construed and all doubts about the propriety of federal jurisdiction are to be resolved against removal." *In re Potash Antitrust Litig.*, 866 F. Supp. 406, 410 (D. Minn. 1994). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Alexander essentially argues that BCS and Guidant had no right to remove under 28 U.S.C. § 1441(a) because there is incomplete diversity of citizenship because St. Anthony's is a Missouri resident. Alexander therefore argues that because there is no original jurisdiction, under 28 U.S.C. § 1447(c) the case must be remanded.

Here, because St. Anthony's is a Missouri resident, the action on its face is not removable. Defendants assert, however, that removal was proper because Alexander fraudulently joined St. Anthony's to defeat diversity jurisdiction. Under the doctrine of fraudulent joinder, joinder of a party that is designed solely to deprive federal courts of jurisdiction is deemed fraudulent and does not prevent removal. *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983). Fraudulent joinder does not require fraudulent intent; rather, fraudulent joinder exists if the plaintiff's claim against an in-state defendant has no chance of success. *Schwenn v. Sears, Roebuck & Co.*, 822 F. Supp. 1453, 1455 (D. Minn. 1993); *see also Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809-10 (8th Cir. 2003) (stating that the Court must "determine whether there is a reasonable basis

for predicting that the state's law might impose liability against the defendant"); *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("Joinder is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendant."); *Anderson*, 724 F.2d at 84 ("Fraudulent joinder exists if, on the face of plaintiff's state court pleadings, no cause of action lies against the resident defendant."). The burden is on the defendants to establish that a party has been fraudulently joined. *Schwenn*, 822 F. Supp. at 1455.

Guidant and BSC contend that the Court should find fraudulent joinder because Alexander failed to plead a cause of action against St. Anthony's. St. Anthony's similarly asserts that complete diversity exists because Alexander failed to state a claim against St. Anthony's. Specifically, Defendants assert that Alexander failed to plead any facts showing that St. Anthony's received the September 22, 2005 recall letter, and even if St. Anthony's did receive the letter, the letter did not instruct physicians to cease implantation of Model 1291 devices or ask for their return. In addition, Defendants assert that the December 12, 2005 Advisory Update states that the devices distributed after the recall letter were not subject to the recall, and therefore the device implanted in Alexander, which was manufactured in December 2005, was not subject to a recall on the date it was implanted.[2]

---

[2] The Court notes that the December 12, 2005 Advisory Update actually states that "Guidant *has recently discontinued* shipping from manufacturing facilities INSIGNIA and NEXUS devices susceptible to 'Failure Mode 2,'" and that "INSIGNIA and NEXUS devices *currently being distributed by Guidant* are not subject to either failure mode and therefore are not included in either recall." (Williams Aff. at Ex. D (emphasis added).)

(Footnote Continued on Next Page)

St. Anthony also asserts that it does not owe a duty to patients to report that the manufacturer of certain devices used in its facilities is a party to litigation regarding products that are not being used with that particular patient. And, St. Anthony asserts that because Alexander has not plead any facts demonstrating that anyone at St. Anthony's assumed a duty to inform him of risks associated with his device, contending that Missouri law requires such assumption, Alexander has failed to state a claim against St. Anthony's.[3]

Alexander, on the other hand, asserts that he has a cause of action against St. Anthony's based on his allegations that St. Anthony's knew that model 1291 pacemakers were known to be dangerously defective by May 25, 2006, and knew that Guidant had recalled model 1291 pacemakers eleven months prior to his implantation yet continued to market the units. Alexander asserts that despite this knowledge, St. Anthony's—acting through its employees/agents—selected a model 1291 Guidant pacemaker to be implanted into Alexander. Alexander alleges that, prior to his implantation, St. Anthony's concealed all of this information from him.

---

(Footnote Continued From Previous Page)
This does not necessarily indicate that the devices distributed after the September 22, 2005 letter were not subject to the recall, as the Advisory Update does not give specific dates as to when those specific devices were discontinued and as to when distribution stopped.

[3] BSC and Guidant also assert that to the extent Alexander's claim against St. Anthony's was a strict liability claim, the claim is foreclosed under Missouri law. Because Alexander concedes that his claim is not a strict liability claim, the Court does not address the issue here.

Alexander asserts that his allegations are supported by the fact that Guidant issued a recall regarding the model 1291 pacemakers on September 22, 2005, Guidant issued a separate recall regarding the model 1291 pacemakers within thirty days of his implantation, and as of the date of his implantation, hundreds of product liability lawsuits involving Guidant pacemakers were pending in state and federal courts. In addition, Alexander asserts that because "[St. Anthony's] is in the business of implanting pacemakers and defibrillators and routinely does business with manufacturers and distributors of implantable cardiac devices," St. Anthony's "would certainly know the quality history and dependability rating of manufacturers selected by [St. Anthony's] to supply pacemakers for implantation by [St. Anthony's]." (Pl.'s Resp. in Opp'n to Def. St. Anthony's Medical Center's Mot. to Dismiss and to Def.'s Opp'n to Pl.'s Mot. to Remand to St. Louis County Circuit Court at 2.)

The Court acknowledges that Alexander is proceeding *pro se*. *Pro se* pleadings are liberally construed and are held to less stringent standards than formal pleadings drafted by lawyers. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (stating *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers). Although BSC and Guidant contend that St. Anthony's failure to warn claims are without factual basis because it was "factually impossible" for St. Anthony's to have disclosed to Alexander that his device was potentially defective, the Court finds that, at this juncture, fact issues preclude the Court from finding that there is no basis for liability.

"[C]ontested issues of fact should be resolved in favor of the plaintiff." *Schwenn*, 822 F. Supp. at 1455. Alexander alleges in his Complaint, among other things, that "the medical center does business with Guidant Corporation on a regular basis and routinely invites Guidant Corporation employees/agents into its operating rooms during the implanting of Guidant pacemakers for programming purposes." (Williams Aff., Ex. B at 4-5.) At a minimum, Alexander has raised an issue as to whether St. Anthony's knew or had reason to know that Alexander's device was recalled and/or potentially defective in light of the publicity Guidant had received prior to Alexander's implantation regarding potentially defective devices.

"Joinder is fraudulent only where there is no reasonable basis in fact or colorable ground supporting the claim against the resident defendant, or where the plaintiff has no real intention of prosecuting the action against the resident defendant." *Schwenn*, 822 F. Supp. at 1455. Here, Alexander's pleadings do allege facts, which if true, have a chance of success. At a minimum, in light of the liberal pleading requirements, the Court cannot conclude that no valid claims are brought against St. Anthony's as a matter of well-settled law. In addition, there is no evidence that St. Anthony's was singled out to avoid federal diversity jurisdiction rather than to obtain full relief. Accordingly, Alexander's joinder of St. Anthony's cannot be deemed fraudulent. Therefore, the Court concludes that because St. Anthony's was joined as a defendant, it lacks subject matter jurisdiction over this action as it currently stands.

**Sever and Remand**

To the extent the Court does find that St. Anthony's was not fraudulently joined, which the Court does find, BSC and Guidant alternatively request the Court to sever and remand Alexander's claims against St. Anthony's to state court and retain jurisdiction over Alexander's claims against BSC and Guidant. Specifically, BSC and Guidant assert that Alexander had fraudulently misjoined St. Anthony as a party, and therefore the claims against St. Anthony should be severed from the claims asserted against BSC and Guidant. BSC and Guidant contend that the claims arising out of St. Anthony's treatment do not arise out of the same transaction or occurrence as the claims against BSC and Guidant because the claims against St. Anthony's are based on medical negligence while the claims against BSC and Guidant are based on product liability. Alexander contends that his claims against St. Anthony's are not negated simply because his claims against BSC and Guidant are based on product liability. Alexander asserts that the Defendants' actions/inactions do arise out of the same transaction or occurrence.

The Federal Rules of Civil Procedure allow for permissive joinder of defendants as follows:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(b).[4] If defendants have been misjoined for the failure to satisfy the conditions for permissive joinder under Rule 20(b), the Rules allow for severance of those defendants:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21.

Upon review of the applicable rules and the pleadings of the parties, the Court finds that St. Anthony's has been improperly joined in this case. The joinder of the malpractice claim against St. Anthony's with the other product liability claims was inappropriate because the claims do not both involve common questions of law or fact and assert joint, several, or alternative liability "arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(b). Any liability that may be found against either BSC/Guidant or St. Anthony's would not be a basis for liability as to the other. However, separate liability as to each could be separately found.

This finding is consistent with how joinder has been interpreted in Missouri. The Missouri Supreme Court, for example, has rejected the propriety of joining defendants involved in successive accidents. *State ex rel. Jinkerson v. Koehr*, 826 S.W.2d 346, 348 (Mo. 1992) (en banc). There, the plaintiffs alleged they were seriously injured as a result of the successive negligent acts or omissions of the defendants "in combination" and that

4 The Missouri rule on permissive joinder is nearly identical to the federal rule and is identical in all relevant parts here. *See* Mo. R. Civ. P. 52.05.

the two accidents "were not separate and distinct but inseparable and indistinguishable thereby creating common liability among all of the named defendants." *Id.* at 346, 348. The supreme court held that joinder was not permitted under Mo. R. Civ. P. 52.05(a) because the cause of action arising out of the two accidents did not arise out the same transaction or occurrence. Instead, "[e]ach defendant [was] responsible for the injuries caused in the accident in which he or she was involved." *Id.* at 348. In light of *Jinkerson*, the Court finds that it likely that the state court would find that Alexander did not have a reasonable basis for joining St. Anthony's under state procedural law and that Alexander should sue St. Anthony's under a separate state action.

Although some courts faced with fraudulent misjoinder claims have required both a finding of misjoinder and a finding of a bad faith attempt to defeat diversity, other courts have refused to apply the "egregious" standard when considering misjoinder in the context of remand petitions. *See In re: Baycol Products Litig.*, MDL No. 1431 (MJD), Case. No. 03-2931, 2003 WL 22341303, at *3 (D. Minn. 2003) (citing cases). The Eighth Circuit Court of Appeals has not addressed the issue.

Here, as the court in *Greene v. Wyeth* found, the Court "rejects the notion that Plaintiff[] ha[s] committed an egregious act or fraud upon the Court." 344 F. Supp. 2d 674, 685 (D. Nev. 2004). "[U]nder our dual court system[, if] a potential plaintiff has a choice between a state forum and a federal forum, it is his privilege to exercise that choice subject to legal limitations, and if he can avoid the federal forum by the device of *properly* joining a non[-]diverse defendant or a non[-]diverse co-plaintiff, he is free to do so." *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977)

(emphasis added). However, where a non-diverse party, such as St. Anthony's here, cannot be properly joined under the Federal Rules of Civil Procedure, other interests, such as the Defendants' statutory right of removal, prevail over that of permitting a plaintiff's choice of forum. *See Greene*, 344 F. Supp. 2d. at 685. Because the misjoinder of St. Anthony's would destroy complete diversity, and because the basis for the causes of action against St. Anthony's do not arise from the same transaction and occurrences as those in the causes of action against the other Defendants, the Court will sever the action against St. Anthony's so as to preserve BSC and Guidant's right to removal in the remaining action and to preserve the interests of judicial expediency and justice.

## II. Motion to Dismiss

Because the Court concludes that the action against St. Anthony's shall be severed and remanded from the lawsuit, the Court denies St. Anthony's Motion to Dismiss as moot.

**IT IS HEREBY ORDERED** that:

1. Plaintiff Alexander's Motion for Remand to St. Louis County Circuit Court (MDL No. 05-1708 (DWF/AJB), Doc. No. 1258; Civil No. 07-1129 (DWF/AJB), Doc. No. 3) is **GRANTED** as to Defendant St. Anthony's Medical Center but **DENIED** as to all remaining Defendants. The Court Orders that all claims against Defendant St. Anthony's Medical Center are **SEVERED** and **REMANDED** to St. Louis County Circuit Court.

2. Defendant St. Anthony's Motion to Dismiss (MDL No. 05-1708 (DWF/AJB), Doc. No. 1308; Civil No. 07-1129 (DWF/AJB), Doc. No. 9) is **DENIED AS MOOT WITHOUT PREJUDICE.**

Dated: June 4, 2007

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court

EXHIBIT E

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

In re: GUIDANT CORP. IMPLANTABLE DEFIBRILLATORS PRODUCTS LIABILITY LITIGATION

MDL No. 05-1708 (DWF/AJB)

This Document Relates to:

Emmett David Brown,

Plaintiff,

v. Civil No. 07-1487 (DWF/AJB)

Guidant Corporation, an Indiana Corporation; Endovascular Technologies, Inc., a California Corporation and a Division of Guidant Corporation; Guidant Sales Corporation; and Dr. Leland B. Housman,

Defendants.

**MEMORANDUM OPINION AND ORDER**

---

Jeanette Haggas, Esq., Mark E. Burton, Jr., Esq., Nancy Hersh, Esq., and Rachel Abrams, Esq., Hersh & Hersh, counsel for Plaintiff.

Timothy A. Pratt, Esq., Sara J. Romano, Esq., and Dana N. Gwaltney, Esq., Shook Hardy & Bacon, LLP, counsel for Defendants Guidant Corporation, Endovascular Technologies, Inc., and Guidant Sales Corporation.

Michael I. Neil, Esq., and David P. Burke, Esq., Neil, Dymott, Frank, Harrison & McFall, APLC; and Timothy A. Pratt, Esq., Shook Hardy & Bacon, LLP, counsel for Defendant Dr. Leland B. Housman.

---

The above-entitled matter is before the Court pursuant to Plaintiff Emmett David Brown's Motion to Remand and Motion for Sanctions [28 U.S.C. § 1447] (MDL

No. 05-1708 (DWF/AJB), Doc. No. 1896; Civ. No. 07-1487 (DWF/AJB), Doc. No. 13) and Defendant Leland Housman, M.D.'s Motion to Sever Medical Malpractice Action and Remand Case Back to Superior Court, State of California, County of Santa Clara (MDL No. 05-1708 (DWF/AJB), Doc. No. 1801; Civ. No. 07-1487 (DWF/AJB), Doc. No. 7). For the reasons stated below, the Court grants Brown's Motion to Remand as to Dr. Housman but denies the Motion as to all remaining Defendants, denies Brown's Motion for Sanctions, and grants Dr. Housman's Motion to Sever and Remand.

## BACKGROUND

In 2003, Dr. Housman implanted a Guidant defibrillator in Brown. In June 2005, Brown's defibrillator was recalled. Thereafter, Dr. Housman explanted and replaced Brown's defibrillator and epicardial leads. After the explant and replacement surgery, the leads penetrated through the surgery incision sites on Brown's chest. This penetration caused infection and the need for further surgeries.

On October 24, 2006, Brown filed this case against Defendants Guidant Corporation, Guidant Sales Corporation, Endovascular Technologies, Inc. ("EVT"),[1] and Dr. Housman in the California Superior Court of Santa Clara County, California. Guidant Corporation and Guidant Sales Corporation (collectively "Guidant") are citizens of Indiana. It is undisputed that Brown and Dr. Housman are California residents. The parties dispute EVT's citizenship. Brown asserts that EVT is a citizen of California, and Guidant and EVT assert that EVT is a citizen of Minnesota and Delaware.

---

[1] EVT is a wholly owned subsidiary of Guidant Corporation.

Brown alleges that Dr. Housman committed medical negligence because he implanted a defective defibrillator and negligently removed and replaced it. Brown also asserts that Dr. Housman knew of information provided by Guidant and/or EVT regarding defects with the defibrillators. Brown alleges that Guidant breached its duties as a manufacturer, distributor, and marketer of defibrillators. As to EVT, Brown alleges that it breached its reporting duties under a Corporate Integrity Agreement.

On January 22, 2007, Guidant and EVT removed the case to the United States District Court for the Northern District of California based on diversity of citizenship, asserting that EVT and Dr. Housman were improperly joined. Thereafter, Guidant sought to transfer the case, and on March 6, 2007, the Judicial Panel on Multidistrict Litigation transferred the action to the District of Minnesota as part of MDL No. 1708. On May 18, 2007, Defendant Dr. Housman filed a Motion to Sever and Remand the allegations against him, and, on June 5, 2007, Brown filed a Motion to Remand and Motion for Sanctions.

## I. Motion to Sever and Remand

Dr. Housman asserts that Brown misjoined Dr. Housman as a party and that the claims against him should be severed from the claims asserted against Guidant and EVT and remanded to state court. The Federal Rules of Civil Procedure allow for permissive joinder of defendants as follows:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(b).[2] If defendants have been misjoined for the failure to satisfy the conditions for permissive joinder under Rule 20(b), the Rules allow for severance of those defendants:

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21.

Dr. Housman asserts that the claims against him (medical negligence) and Guidant (product liability) are legally distinct and that none of the causes of action overlap one another. In addition, Dr. Housman asserts that the facts that would support a claim against him involve the quality of medical care given to Brown, whereby the facts that would support a claim against Guidant would have nothing to do with the standard of care for Dr. Housman, but instead would focus on the products used. Therefore, Dr. Housman contends that the claims arising out of his treatment do not arise out the same transaction or occurrence as the claims against Guidant and EVT.[3]

Brown, on the other hand, contends that Dr. Housman, Guidant, and EVT's actions/inactions do arise out of the same transaction or occurrence. Brown asserts that

---

2 The California rule on permissive joinder is nearly identical to the federal rule and is identical in all relevant parts here. *See* Cal. Civ. Proc. Code § 379(a)(1).

3 To the extent that the Court finds that severance and remand is necessary, Guidant and EVT agree with Dr. Housman to the extent that only Dr. Housman should be severed and remanded and that the Court should retain jurisdiction over Brown's claims against Guidant and EVT.

he would not have had to endure the surgery whereby the leads were misplaced if his Guidant defibrillator was not defective. Brown also asserts that his surgery shares common questions of law and/or fact with Brown's product liability claims against Guidant and EVT. Brown contends that the chain of events that led to Brown's injury inextricably connects the facts and legal issues surrounding the medical negligence and product liability claims. Specifically, Brown asserts that Dr. Housman's testimony, notes, and other related information regarding Brown's implant and explant surgeries will be required for the negligence, fraud, and CLRA claims against Guidant. Further, Brown contends that he makes the same claim for damages against all Defendants and that each Defendant is jointly and severally liable for the damages Brown sustained.

Upon review of the applicable rules and the pleadings of the parties, the Court finds that Dr. Housman has been improperly joined in this case. Brown's claim against Dr. Housman is medical negligence, which would require evidence on Brown's care, treatment, and services provided by Dr. Housman. Brown's claims against either Guidant or EVT are general negligence or product liability claims based on alleged manufacturing and design defects, alleged failure to properly warn, and alleged misrepresentation of the health risks associated with certain cardiac medical devices. These claims would require evidence on the development, manufacture, and testing of Brown's ICD along with evidence of Guidant and EVT's knowledge, warnings, and representations regarding defective ICD's. The joinder of the malpractice claim against Dr. Housman with the other general negligence and product liability claims was inappropriate because the claims do not both involve common questions of law or fact

and assert joint, several, or alternative liability "arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(b). Any liability that may be found against either Guidant/EVT or Dr. Housman would not be a basis for liability as to the other. However, separate liability as to each could be separately found.[4] Furthermore, because of the nature, stage, and progression of this MDL, especially in light of the proposed settlement involving Guidant, "the rights of the parties and interest of justice is best served by severance." Fed. R. Civ. P. 21.

Although some courts faced with fraudulent misjoinder claims have required both a finding of misjoinder and a finding of a bad faith attempt to defeat diversity, other courts have refused to apply the "egregious" standard when considering misjoinder in the context of remand petitions. *See In re: Baycol Products Litig.*, MDL No. 1431 (MJD), Case. No. 03-2931, 2003 WL 22341303, at *3 (D. Minn. 2003) (citing cases). The Eighth Circuit Court of Appeals has not addressed the issue.

Here, as the court in *Greene v. Wyeth* found, the Court "rejects the notion that Plaintiff[] ha[s] committed an egregious act or fraud upon the Court." 344 F. Supp. 2d

[4] While California case law seems to take a broad view of joinder, the Court's finding is still consistent. The California Supreme Court has stated that section 379, subdivision (c) "does not permit the unlimited joinder of defendants; it provides for joinder only when plaintiff pleads a specific relationship between the defendants, namely, a single or cumulative injury, giving rise to doubt as to the respective liability of defendants for that injury. In other words, when a plaintiff states facts showing a reasonable uncertainty as to the respective liability of the defendants, these same facts constitute the connection that links the acts of the defendants and fulfills any claimed requisite of 'factual nexus.'" *Landau v. Salam*, 484 P.2d 1390, 1395 (Cal. 1971). Here, Brown has not alleged that he is in doubt as to which Defendant is liable for which actions.

674, 685 (D. Nev. 2004). "[U]nder our dual court system[, if] a potential plaintiff has a choice between a state forum and a federal forum, it is his privilege to exercise that choice subject to legal limitations, and if he can avoid the federal forum by the device of *properly* joining a non[-]diverse defendant or a non[-]diverse co-plaintiff, he is free to do so." *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977) (emphasis added). However, where a non-diverse party, such as Dr. Housman here, cannot be properly joined under the Federal Rules of Civil Procedure, other interests, such as the Defendants' statutory right of removal, prevail over that of permitting a plaintiff's choice of forum. *See Greene*, 344 F. Supp. 2d. at 685. Because the basis for the causes of action against Dr. Housman do not arise from the same transaction and occurrences as those in the causes of action against Guidant and EVT, the Court will sever the action against Dr. Housman so as to preserve Guidant and EVT's right to removal in the remaining action and to preserve the interests of judicial expediency and justice.

## II. Motion to Remand

The party seeking removal and opposing remand bears the burden of establishing federal subject matter jurisdiction. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). Generally, a state court action may only be removed if a federal district court would have original jurisdiction to hear the case. 28 U.S.C. § 1441(a).[5]

[5] Section 1441(a) provides in pertinent part:

(Footnote Continued on Next Page)

Where the action is based upon diversity jurisdiction, it is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). A corporation is deemed a citizen of the state in which it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). "In determining whether removal was proper, the removal statute is to be narrowly construed and all doubts about the propriety of federal jurisdiction are to be resolved against removal." *In re Potash Antitrust Litig.*, 866 F. Supp. 406, 410 (D. Minn. 1994). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Brown argues that the Court should remand the entire action asserting lack of subject matter jurisdiction and defects in the removal procedure. As to the latter, Brown contends that Guidant and EVT's removal was untimely, did not have proper consent from Dr. Housman, was facially deficient, and did not meet the requisite amount in controversy.

---

(Footnote Continued From Previous Page)

> [A]ny civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States.

28 U.S.C. § 1441(a).

**A. Timeliness/Consent/Deficiency**

Brown served Dr. Housman on December 14, 2006. Guidant and EVT removed the action on January 22, 2007. Brown argues that Guidant and EVT had no right to remove because Dr. Housman did not remove nor consent to removal within thirty days of service of the Complaint. Brown also argues that Guidant's removal is facially deficient because Guidant did not explain why Dr. Housman had not joined in the removal. Guidant and EVT assert that Guidant's removal was proper and timely because all properly-joined Defendants consented to removal and neither Guidant nor EVT were served with a summons and complaint; therefore, the 30-day period for removal was never triggered.

"The notice of removal of a civil action . . . shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (holding that a defendant's time to remove is triggered by formal service of the summons and the complaint, not "by mere receipt of the complaint unattended by any formal service"). Removal is proper "if none of the parties in interest *properly joined* and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added). Consistent therewith, the usual rule that all defendants in an action in state court join in a petition for removal does not apply to "nominal, unknown, or fraudulently-joined parties." *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002).

Here, because Dr. Housman was not properly joined, his consent was neither necessary nor did the service of process on him trigger the deadline for removal. Further, as to Brown's assertion that Guidant's removal was facially deficient, the Court disagrees. Guidant and EVT stated in their Notice of Removal that Dr. Housman was improperly joined. (Aff. of Timothy A. Pratt in Supp. of Defs. Guidant Corporation, Endovascular Technologies, Inc. and Guidant Sales Corporation's Opp'n to Pl.'s Mot. to Remand ("Pratt Aff."), Ex. A at 3.) Guidant and EVT also stated that all properly-joined Defendants had consented to removal and that Defendants who are not properly joined need not consent to removal. (*Id.*) Therefore, the Notice of Removal was not facially deficient because Guidant did explain why it did not have Dr. Housman join in the removal. Thus, Brown's untimeliness, non-consent, and facially deficient arguments fail.

**B. Requisite Amount in Controversy**

Brown also asserts that Guidant and EVT have failed to show the action meets the requisite amount in controversy. Brown points to Guidant and EVT's Notice of Removal, whereby Guidant and EVT assert that the "face of the complaint makes clear that plaintiff seeks damages in excess of $75,000" because Brown seeks "damages for surgical placement and replacement of an allegedly defective defibrillator in him." (Pratt Aff., Ex. A at 11.) Brown contends that this is insufficient to demonstrate that the amount in controversy exceeds $75,000. Guidant and EVT, on the other hand, assert that they have met their burden. Guidant and EVT point to Brown's allegations in the Complaint where he alleges "serious injuries to his chest," (Compl. ¶ 130), and alleges that he "required healthcare and medical services, and incurred direct medical costs for

physician care, monitoring, treatment, medications, and supplies." (*Id.*) Guidant and EVT also point out that Brown is seeking general, special, and punitive damages, restitution and disgorgement of profits, compensatory and other damages, costs, including experts' fees and attorneys' fees and expenses, and the costs of prosecuting this action. (Compl., Prayer for Relief at 24.) The Court finds that in light of the allegations plead and in light of the other complaints filed by Brown's attorneys directly in this MDL alleging similar claims and damages whereby they plead that the requisite jurisdictional amount was met, a jury could return an award in excess of $75,000. Therefore, Brown's argument fails.

**C. Subject Matter Jurisdiction**

Brown contends that the Court lacks subject matter jurisdiction, asserting that removal was improper under 28 U.S.C. § 1441(a) because Dr. Housman and EVT are California residents, thereby creating incomplete diversity of citizenship. As to EVT, Brown contends that Guidant has admitted in Answers that it has filed that EVT maintains its principal place of business in California. Therefore, Brown asserts that EVT is a citizen of California causing the Court to have no original jurisdiction. Brown also asserts that under 28 U.S.C. § 1447(c), the case must therefore be remanded.

Guidant and EVT assert that complete diversity of citizenship does exist. Guidant and EVT contend that Dr. Housman's citizenship should be disregarded because he was improperly joined as a defendant. The Court agrees, as is explained above.

As to EVT's citizenship, Guidant and EVT assert that EVT is not a California citizen. Guidant points out that the pleadings that Brown sites to for support that EVT is

a California citizen date back to 2002 and 2003. Guidant explains that at that time, EVT's principal place of business was in California. But Guidant asserts that in October 2006, when the Complaint was filed here, and in January 2007, when the case was removed, EVT had no business operations in California. Citing to Jeffrey Kruse's declaration, Senior Counsel for EVT, Guidant asserts that since June 30, 1989, EVT has been a Delaware corporation, and since April 2006, EVT has had its headquarters and business operations in St. Paul, Minnesota. Therefore, Guidant and EVT assert that EVT is a citizen of Delaware and Minnesota.

Brown's only response to Guidant's assertion is that EVT was a California citizen at the time he was injured in March 2004. Brown, however, asserts no authority for the proposition that the Court should analyze citizenship as of the date of injury for purposes of diversity jurisdiction.

The Court agrees with Guidant and EVT that EVT is not a California citizen. For purposes of diversity jurisdiction, the Court analyzes citizenship as of the date that the Complaint was filed. *Grupo Dataflux v. Atlas Global Group, LP*, 541 U.S. 567, 571 (2004). Therefore, because at the time that the Complaint was filed, EVT was a citizen of Delaware and Minnesota, Guidant was a citizen of Indiana, and Brown was a citizen of California, complete diversity of the parties exists,[6] and the Court denies Brown's

---

6 The Court disregards Dr. Housman's citizenship because he was improperly joined in this case, as is explained above.

Motion to Remand as to his case against Guidant and EVT.[7] Consistent with the Court granting Dr. Housman's Motion to Sever and Remand, the Court grants in part Brown's Motion to Remand only to the extent that the Court severs and remands Brown's claims against Dr. Housman.

## II. Motion for Sanctions

Based on Brown's assertion that the parties here are properly joined and non-diverse and because Dr. Housman did not consent to removal, Brown also contends that Guidant should be sanctioned for removing this action. Here, because the Court finds that Guidant and EVT's removal was proper and because the record does not show bad faith on the part of Guidant or EVT, the Court concludes that sanctions are not warranted.

**IT IS HEREBY ORDERED** that:

1. Defendant Leland Housman, M.D.'s Motion to Sever Medical Malpractice Action and Remand Case Back to Superior Court, State of California, County of Santa Clara (MDL No. 05-1708 (DWF/AJB), Doc. No. 1801; Civ. No. 07-1487

---

[7] Guidant and EVT argued alternatively that if the Court found EVT to be a citizen of California, that EVT's citizenship should be disregarded because it was fraudulently joined as a defendant. Because the Court finds EVT to be a California citizen, it need not address whether EVT was fraudulently joined. However, "[j]oinder is fraudulent only where there is no reasonable basis in fact or colorable ground supporting the claim against the resident defendant, or where the plaintiff has no real intention of prosecuting the action against the resident defendant." *Schwenn v. Sears, Roebuck & Co.*, 822 F. Supp. 1453, 1455 (D. Minn. 1993). And, because "contested issues of fact should be resolved in favor of the plaintiff," *id.*, the Court notes that, at this juncture, fact issues would preclude the Court from finding that there is no basis for liability.

(DWF/AJB), Doc. No. 7) is **GRANTED**. The Court Orders that all claims against Defendant Leland Housman, M.D. are **SEVERED** and **REMANDED** to Superior Court, State of California, County of Santa Clara.

2. Plaintiff Emmett David Brown's Motion to Remand and Motion for Sanctions [28 U.S.C. § 1447] (MDL No. 05-1708 (DWF/AJB), Doc. No. 1896; Civ. No. 07-1487 (DWF/AJB), Doc. No. 13) is **GRANTED** as to the remand of Defendant Leland Housman, M.D., but **DENIED** as to the remand of all remaining Defendants and **DENIED** as to Brown's Motion for Sanctions.

Dated: August 30, 2007

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court

JS 44 (Rev. 12/07) (cand rev 1-08)

# CIVIL COVER SHEET

ORIGINAL

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

FILED 08 JUL 18 PM 3:37
CLERK, U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA
BY: DEPUTY

'08 CV 1294 L AJB

## I. (a) PLAINTIFFS
FREDERICK B. NIMTZ

## DEFENDANTS
DANIEL CEPIN, M.D., GUIDANT CORP. AND DOES 1-20

(b) County of Residence of First Listed Plaintiff SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant SAN DIEGO
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
FREDERICK B. NIMTZ - IN PRO PER
3815 VALLEY VISTA ROAD
BONITA, CA 91902
(619) 479-7585

Attorneys (If Known)
THOMAS J. STODDARD, ESQ.
GORDON & REES LLP
101 WEST BROADWAY, SUITE 2000
SAN DIEGO, CA 92101

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State. | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury — Med. Malpractice
- ☒ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities – Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R.& Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA(1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity):**
Defendants removal of action under 28 U.S.C. 1441 and 1446 (Plaintiff's action described below)

Brief description of cause:
Product liability versus medical device manufacturer

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

**PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".**

DATE
July 17, 2008

SIGNATURE OF ATTORNEY OF RECORD
(Thomas J. Stoddard)

153150 $350.00
07/18/08 TB

American LegalNet, Inc.
www.FormsWorkflow.com

**UNITED STATES**
**DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 153150 - MB**

**July 18, 2008**
**15:42:03**

**Civ Fil Non-Pris**
USAO #.: 08CV1294 CIVIL FILING
Judge..: M. JAMES LORENZ
Amount.: $350.00 CK
Check#.: BC70339

**Total-> $350.00**

FROM: FREDERICK B NIMTZ VS
DANIEL CEPIN MD, ET AL

ORIGINAL

KEVIN W. ALEXANDER (SBN: 175204)
kalexander@gordonrees.com
THOMAS J. STODDARD (SBN: 136299)
tstoddard@gordonrees.com
GORDON & REES LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
Telephone: (619) 696-6700
Facsimile: (619) 696-7124

Attorneys for Defendant
GUIDANT CORPORATION

FILED
JUL 18 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERICK B. NIMTZ,<br>Plaintiff,<br>vs.<br>DANIEL CEPIN, M.D., GUIDANT CORPORATION, and DOES 1 to 20,<br>Defendants. | CASE NO. 08 CV 1294 L AJB<br>**PROOF OF SERVICE OF NOTICE TO ADVERSE PARTY OF REMOVAL TO FEDERAL COURT**<br>[Filed concurrently with Notice of Removal, Notice of Related Cases, Certification as to Interested Parties]<br>Complaint Filed: 6/26/08 |

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon & Rees LLP 101 W. Broadway, Suite 1600, San Diego, CA 92101. On July 18, 2008, I served the within documents:

**1. CIVIL COVER SHEET**
**2. NOTICE OF PARTY WITH FINANCIAL INTEREST**
**3. NOTICE OF RELATED CASES PURSUANT TO LOCAL RULE 40.1**
**4. NOTICE OF REMOVAL OF ACTION BY DEFENDANT GUIDANT CORPORATION PURSUANT TO 28 U.S.C. SECTIONS 1441 AND 1446**
**5. CERTIFICATION AS TO INTERESTED PARTIES**

☐ **BY FACSIMILE, [Fed. Rule Civ. Proc. Rule 5(b)]** by sending a true copy from Gordon & Rees LLP's facsimile transmission telephone number (619) 696-7124 to the fax number(s) set forth below, or as stated on the attached service list. I am readily familiar with the firm's practice for sending facsimile transmissions, and know that in the ordinary course of Gordon & Rees LLP's business practice the document(s) described above will be transmitted by facsimile on the same date that it (they) is (are) placed at Gordon & Rees LLP for transmission.



Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

☒ **BY U.S. MAIL [Fed. Rule Civ. Proc. Rule 5(b)]** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Diego, addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

**BY ELECTRONIC FILING.** I caused all of the pages of the above-entitled document(s) to be electronically filed and served on designated recipients through the Electronic Case Filing system for the above-entitled case. The file transmission was reported as successful and a copy of the Electronic Case Filing Receipt will be maintained with the original document(s) in our office.

**<u>Attorneys for Plaintiff</u>**
Frederick B. Nimtz (In Pro Per)
3815 Valley Vista Road
Bonita, CA 91902
(619) 479-7585

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on July ~~28~~ 18 KC, 2008, at San Diego, California.

KIMBERLEE COLE

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101